## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

| | |
|---|---|
| In re:<br><br>POST OAK TX, LLC,<br><br>               Debtor.[1] | Chapter 11<br><br>Case No. 21-18563-EPK |

### DECLARATION OF DIANA ECCLESTONE
### IN SUPPORT OF THE CHAPTER 11 PETITION AND VARIOUS PLEADING

I, Diana Ecclestone, pursuant to section 1746 of title 28 of the United States Code, hereby declare that the following is true and correct to the best of my knowledge, information, and belief.

1. My name is Diana Ecclestone. I am over the age of eighteen and am competent to testify.

2. I am an authorized representative of Post Oak TX, LLC, as debtor and debtor in possession (the "Debtor").

3. I am familiar with and knowledgeable of the Debtor's day-to-day operations, business, and financial affairs, and books and records, as well as the circumstances leading to the commencement of this chapter 11 case (the "Chapter 11 Case"). I submit this declaration (this "Declaration") to assist the Court and other parties in interest in understanding the circumstances and events that led to the commencement of the Chapter 11 Case and in support of the motions and applications that the Debtor will file with the Court. I am authorized to submit this Declaration on behalf of the Debtor.

---

[1] The last four digits of the Debtor's tax identification number are 2544. The Debtor's principal address is 1555 Palm Beach Lakes Blvd., Suite 1100, West Palm Beach, FL 33401.

4.  Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by employees of the Debtor, my opinion based upon my experience, knowledge, and information concerning the Debtor's operations and financial condition, or from my discussions with the Debtor's proposed counsel, León Cosgrove, LLP ("LC"). If called upon to testify, I would and could testify competently to the facts set forth in this Declaration on that basis.

## Background

5.  The Debtor is a Delaware limited liability company. It is wholly owned by Hotel Resort Properties LLLP, a Florida limited liability limited partnership (the "Member"). The general partner of the Member is Hotel Resort Company, a Florida corporation, and its Chairman and President is E. Llwyd Ecclestone, Jr.

6.  The Member is located at 1555 Palm Beach Lakes Blvd., Suite 1100, West Palm Beach, Florida 33401, which is also the principal place of business of the Debtor.

7.  The Debtor also has two independent directors, Michelle Dreyer and Benjamin Hancock, who have limited roles, including whether the Debtor should file for bankruptcy relief.

8.  The Debtor is the sole owner of the Hilton Houston Post Oak Hotel (the "Hotel") located in Houston, Texas. The Hotel consists of fourteen stories, 448 rooms (27 suites), 29,855 square feet of meeting space, 18 meeting rooms, 345 covered parking spaces, a fitness center, an outdoor deck pool, and a business center. It is located at the Galleria Shopping Mall in Houston, one of the largest malls in the United States.

9.  The Hotel is managed by Hilton Global LLC ("Hilton") pursuant to the terms of a March 1, 2005 Management Agreement, as amended (the "Hilton Management Agreement"). Under the terms of the Hilton Management Agreement, Hilton controls the Debtor's operating

account, and is responsible for paying substantially all of the Debtor's operating expenses, as well as payroll for the employees who work at the Hotel.

10.     The Debtor does not own the real property on which the Hotel is situated. Instead, the Debtor is a party to a ground lease with R.E. Smith Interests, Inc. (the "Ground Lease"). The term of the Ground Lease expires in October 2068.

11.     On September 15, 2014, the Debtor entered into a loan agreement (the "Loan") with JPMorgan Chase Bank, N.A. ("Chase") in the original principal amount of $80,000,000. The "Loan Documents" include a Loan Agreement; a Promissory Note in the principal amount of $45,000,000; a Promissory Note in the principal amount of $35,000,000; a Leasehold Deed of Trust, Assignment of Leases and Rents, and Security Agreement; a Cash Management Agreement ("CMA"); a Deposit Account Control Agreement ("DACA"); a UCC-1 Financing Statement filed in Delaware; and an Assignment of Management Agreement, Subordination, Non-Disturbance and Attornment Agreement ("SNDA"). [2] The Loan Documents are attached as **Exhibits 1 through 8** hereto. The Loan has a 10 year term. It was interest only for the first 3 years, and amortized over a 30 year period for the remaining 7 years.

12.     After it was originated, the Loan was almost immediately assigned and securitized. The master servicer under the Loan is Wells Fargo Commercial Mortgage Servicing. The special servicer is Rialto Capital Advisors, LLC ("Rialto").

13.     According to the default letter that Rialto sent to the Debtor, the current owner and holder of the beneficial interests under the Loan is RSS JPMBB2014-C25 – TX POT, LLC (the "Lender").

---

[2] The SNDA is attached to the this Declaration without exhibits.

14. Since wholly owning the Hotel, the Debtor was profitable every year between 2010 and 2019.

15. Furthermore, over the years, the Debtor has worked closely with Hilton to maintain a AAA 4 star rating for the Hotel. In fact, between 2010 and 2019, the Debtor infused over $19 million into the Hotel to maintain, update and renovate the Hotel.

16. At no point between 2010 and 2019 did the Debtor fail to make a debt service payment.

17. Due to the onset of the coronavirus pandemic and the subsequent, all-too-familiar shelter in place orders beginning in March 2020, however, the Debtor's main sources of revenues—room stays, events, and food and beverage—dropped precipitously, and the effect on the Hotel was profound. For instance, in February 2020, operating revenues were $2,441,596, but by April 2020, they dropped to $147,566.

18. Immediately after the pandemic hit, the Debtor took steps to address the economic impact of the pandemic on the Hotel. It sent numerous items of correspondence and emails to the Lender setting forth various paths forward. The Lender, through Rialto, repeatedly failed to timely respond to the Debtor's communications.

19. The Debtor attempted to mitigate the damage caused by the pandemic by applying for and obtaining a $1,916,917 loan under the Paycheck Protection Program ("PPP") from JPMorgan Chase Bank, N.A. ("Chase"), representing 2.5 times payroll. Under certain SPE (special purpose entity) provisions of the Loan Documents, the Debtor was required to obtain consent of the Lender to obtain and use the PPP funds. The Lender, however, acting through Rialto, refused to consent, and the Debtor returned the funds to Chase. This had a drastic effect on the ability of the Debtor to stay current under the Loan Documents and to meet its other obligations.

20. In addition, the refusal of Rialto to consent to the use of the first round of PPP money effectively precluded the Debtor from obtaining a second round of PPP money which would have been 3.5 times payroll, or approximately $2,683,000. The PPP loans, that would have been subordinate to the Loan and would likely have been forgiven, would have provided significant relief to the Debtor, and potentially could have averted a default.

21. Notably, the Lender is now asserting that the Debtor owes in excess of $5 million in default interest.

22. In addition, the Lender, through Rialto, delayed in providing payoff and "come current" or loan reinstatement amounts to the Debtor. For example, between June 10, 2021 and July 7, 2021, the Debtor requested Rialto to provide it with "come current" figures under the Loan Documents at least five times as part of the Debtor's efforts to work with a potential new equity partner. It was not until July 12, 2021, that Rialto finally responded to the Debtor's request. Its response, however, at best deficient.

23. The Lender's calculations double counted or overstated certain items, including advances made for ground rent, real estate taxes and an FF&E reserve required under the Hilton Management Agreement. The Debtor's good faith efforts to resolve disputes over the amounts owed have been unavailing, and, unlike Florida where state courts are available to resolve disputes over amounts owed, no such pre-sale forum exists in Texas in cases like this where a lender chooses to proceed by non-judicial foreclosure on relatively short notice. As noted above, the Lender's calculation also include over $5 million in default interest as well as over $1,300,000 in workout fees, special servicing fees and late fees.

24. On August 2, 2021, the Lender sent a formal notice of default to the Debtor. The notice of default alleges various defaults under the Loan Documents, and accelerates the debt owing under the Loan. A copy of the Notice of Default is attached as **Ex. 9**.

25. On August 17, 2021, the Lender sent the Debtor a Notice of Foreclosure, scheduling a non-judicial foreclosure sale for September 7, 2021. A copy of the Notice of Foreclosure is attached as **Ex. 10**.

26. Over the last month, from before the issuance of the Notice of Default, the Debtor worked diligently to reach a resolution with the Lender. Its Member is willing to infuse additional money in order to reach an agreement with the Lender, and it has a potential equity partner that would add even more money for purposes of resolution.

27. To that end, the Debtor continued to try and get valid come current figures from the Lender. Yet, as recently as August 27, 2021, when the Debtor pointed out that the come current figures overstated by $1 million the shortfall in the FF&E reserve, which is based on a percentage of revenues, Rialto responded: "these calculations are based on the MS (Master Servicer) assessment [from before COVID]. Not sure there is much we can do about this amount."

28. The Debtor requested that the Lender postpone the foreclosure sale that the Lender set on 21 days' notice, so that it could try to get clarity on the "come current" figures and ideally, come to a resolution with the Lender. The Lender refused to do so.

29. The Debtor has been left without an adequate forum to resolve its disputes with the Lender concerning the come current or payoff amount, and without an adequate opportunity to negotiate a resolution. Left with no satisfactory alternative, the Debtor filed this Chapter 11.

30. The Debtor believes that Chapter 11 provides it with the best opportunity to achieve a 100% recovery for unsecured trade creditors, and provide it with a forum to resolve the disputes relating to the amount of Lender's debt.

31. I anticipate that the Debtor will file several pleadings in the first week of the bankruptcy case to allow it to meet necessary obligations and fulfill its duties as a debtor in possession, including:

   a. *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 3 63,(II) Deeming Its Secured Lender Adequately Protected Pursuant to 11 U.S.C. §§ 361 and 363, and (III) Scheduling a Final Hearing;*

   b. *Debtor 's Motion for Entry of Interim and Final Orders Authorizing the Debtor, Through Hilton, to (A) Operate Its Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, (D)Maintain Existing Customer Programs and (E) Honor Prepetition Customer Obligations, and (II) Granting Related Relief* ; and

   c. *Debtor's Motion for Entry of an Order (A) Authorizing the Debtor to (I) Pay Prepetition Employee Wages, Salaries, and Other Compensation, and (II) Continue Employee Benefits Programs, and (B) Granting Related Relief*.

32. These pleadings seek authority to, on an emergency basis, use cash collateral, ensure the continuation of the Debtor's cash management system, honor customer obligations and maintain other operations in the ordinary course of business, and honor employee-related wages and benefit obligations. I believe all relief sought in these pleadings is critical to the continued success of the Debtor during this Chapter 11 Case and ultimately, of benefit to all stakeholders, and that it is critical that the Court grant the relief sought by the motions on an emergency basis.

*[Remainder of Page Intentionally Left Blank]*

Dated:   September 1, 2021
        Miami, Florida

By: /s/ *Diana Ecclestone*
Name: Diana Ecclestone

{00217447. 2 }